IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERRI A. ROESSING, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:19-cv-161 |
| | ) |
| v. | ) JUDGE KIM R. GIBSON |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

Pending before the Court is Defendant United States of America's Motion for Summary Judgment (ECF No. 30) on Plaintiff Sherri Roessing's negligence claim under the Federal Tort Claims Act. The issues have been fully briefed (ECF Nos. 30, 31, 32, 33, 36, 37, 38, 39, 40) and the motion is ripe for disposition. For the reasons that follow, the Court **GRANTS** the motion.

### I. Jurisdiction

The Court has subject matter jurisdiction because Plaintiff claims money damages for an injury caused by the negligence of a Government employee. 28 U.S.C. § 1346(b)(1). Venue is proper because a substantial part of the events giving rise to Plaintiff's claims occurred in the Western District of Pennsylvania. 28 U.S.C. § 1391(b)(2).

### II. Procedural History

On October 9, 2018, Roessing filed an administrative tort claim requesting $15,000 in damages from the United States Postal Service. (ECF No. 1 ¶ 5) On February 19, 2019, Roessing's administrative tort claim was denied. (ECF No. 1 ¶ 6) On October 4, 2019, Roessing filed a Complaint naming the United States as defendant. (ECF No. 1)

On October 30, 2020, the United States filed a Motion for Summary Judgment (ECF No. 30), a brief in support (ECF No. 31), a concise statement of material facts (ECF No. 32), and an appendix of exhibits (ECF No. 33). Thereafter, Roessing filed her brief in opposition (ECF No. 37) and counterstatement of undisputed material facts (ECF No. 36). The United States subsequently filed reply brief (ECF No. 39) and objections to Roessing's counterstatement of undisputed material facts (ECF No. 38), and Roessing filed a reply to the United States' objections to her counterstatement of undisputed facts (ECF No. 40).

### III. Factual Background

The Court derives these facts from a combination of the United States' Concise Statement of Material Facts (ECF No. 32), Roessing's Counterstatement of Material Fact (ECF No. 36), as well as the United States' attached Appendix of Exhibits (ECF No. 33). The United States objected to Roessing's Counterstatement of Material Facts contending that some of the facts included are not supported by admissible evidence. (ECF No. 38) Roessing filed a reply to the United States' objections to her counterstatement of facts. (ECF No. 40) All facts recounted here are undisputed unless otherwise noted.

a. **Altoona Post Office and Relevant Employees**

The Altoona Post Office is located at 1201 11th Avenue in Altoona, Pennsylvania. (ECF No. 1 ¶ 1) The Post Office sits at the corner of 11th Avenue and 12th Street. The entrance to the post office is on 11th Avenue. 11th Avenue is a one-way street with one lane of traffic (the lane closest to the post office) and one parking lane. (ECF Nos. 33-5 at 35:23–14; 33-6; 33-7) There is a pedestrian crosswalk across 11th Avenue at the intersection of 11th Avenue and 12th Street.

(ECF Nos. 33-5 at 52:8–14; 3-6; 33-7)  The crosswalk is composed of red bricks with white lines painted on either side of the crosswalk. (ECF Nos. 33-6; 33-7)

On February 8, 2018, Robert Chamberlin was the Customer Service Supervisor at the post office. (ECF No. 33-2 at 11:2–4)  Chamberlin supervised the custodians who performed maintenance of the post office, including maintenance of the sidewalks. (*Id.* at 12:3–8)  On February 8, 2018, Stacy Hutton was the custodian responsible for the maintenance of the sidewalk in front of the post office. (ECF No. 33-3 at 11:8–19, 12:3–8)  Bill Pulsine was the other custodian working at the post office at that time. (*Id.* at 16:12–17:2)

### b. Weather Conditions on February 7, 2018

The United States Department of Commerce National Oceanic and Atmospheric Administration ("NOAA") Weather Service Report for February 7, 2018, provides that there was a mix of snow and freezing rain beginning at 5:00 a.m. (ECF No. 33-4 at 2–4, 6–7)  Hutton testified that there was snow and freezing rain on February 7, 2018. (ECF No. 33-3 at 14:6–13)  As a result of the snow and freezing rain, Hutton and Pulsine shoveled snow on the sidewalk in front of the post office and put more salt on the sidewalk than usual. (*Id.* at 14:14–15:8, 23:8–13, 26:1–6)

### c. Weather Conditions on February 8, 2018

The NOAA Weather Service Report for February 8, 2018, provides that there was no more than trace precipitation beginning at 1:00 a.m. until midnight. (ECF No. 33-4 at 4–5, 7–8)  The minimum temperature in Altoona on February 8 was 15 degrees Fahrenheit and the maximum temperature was 25 degrees Fahrenheit. (*Id.* at 2)

### d. Maintenance on the Post Office Sidewalk

3

Chamberlin instructs the custodians at the Altoona Post Office to perform maintenance on the post office. (ECF No. 33-2 at 12:10–23) On snowy and rainy days, the custodians arrive at 4:00 a.m. to perform maintenance duties and on other days they arrive at 6:00 a.m. (*Id.* at 13:13–19) Hutton testified that he arrived at the post office for his shift a few minutes before 6:00 a.m. on February 8, 2018. (ECF No. 33-3 at 17:17–24) Hutton's normal routine is to check the condition of the sidewalks after arriving at work, but he is uncertain whether he did any ice or snow removal on February 8, 2018. (*Id.* at 17:17–24, 18:5–10) As of February 8, 2018, the custodians at the post office had a snowblower, salt spreader, and shovels to maintain the post office's sidewalks. (ECF Nos. 33-2 at 17:19–18:4; 33-3 at 22:21–23:2)

e. **Travel to the Post Office and Condition of the Area Outside the Post Office**

Plaintiff, Sherri Roessing, is a 67-year-old woman residing in Altoona, Pennsylvania. (ECF No 33-1 at 26:20–22, 27:8–11) Roessing lives a ten-minute drive from the Altoona Post Office. (*Id.* at 38:14–18) On the morning of February 8, 2018, Roessing observed snow on her driveway, she removed snow from the sidewalk in front of her home, and she salted the sidewalk prior to going to the post office. (*Id.* at 32:5–33:15, 37:9–11)

On February 8, 2018, Roessing's sister, Darlene Betar, drove to Roessing's house, picked her up, and drove her to the Altoona Post Office to mail a package. (ECF Nos. 33-1 at 36:4–23, 48:17–25; 33-5 at 21:16-18, 22:21–24) Betar stated that she dropped off Roessing in the middle of 11th Avenue in front of the Altoona Post Office. (ECF No. 33-5 at 26:25–27:2, 27:18–24) Roessing exited the car before Betar parked the car, jaywalked quickly across 11th Avenue toward the post office. (ECF Nos. 33-1 at 39:16–40:8; 33-5 at 10:15–17, 27:18–24, 39:8–25) Roessing had to exit the car before Betar backed the car into a parking space because a snow

4

bank on the side of the road opposite the post office would have prevented Roessing from exiting the car after it was parked. (ECF Nos. 33-1 at 39:21–40:2; 33-5 at 18–24) Roessing walked quickly across the road because it was cold. (ECF No. 33-1 at 40:24–41:3) There was no traffic coming toward Roessing when she crossed the road. (ECF Nos. 33-1 at 40:9–20; 33-5 at 39:21–25)

There was a snowbank along the edge of the road on the side of 11th Avenue opposite the post office. (ECF No. 33-1 at 39:21–22) Roessing did not observe the sidewalk on the other side of the street from the post office on 11th Avenue so she did not know whether it was clear. (ECF No. 33-1 at 39:21–40:2) However, Betar stated that she observed the sidewalk and it was "cleared off pretty good." (ECF No. 33-5 at 30:7–17)

The municipality had cleared the crosswalk across 11th Avenue at the intersection with 12th Street for pedestrian travel. (ECF No. 33-5 at 30:24–31:8, 59:8–15) Betar stated that the crosswalk was cleared of snow and ice, as was the sidewalk in front of the post office. (*Id.* at 31:2–14, 67:10–15, 68:4–9, 69:1–5) Roessing did not use the cleared crosswalk at the intersection of 12th Street and 11th Avenue to access the sidewalk in front of the post office. (ECF Nos. 33-1 at 40:6–8, 41:4–11; 33-5 at 10:15–17) Nothing prevented Roessing from using the crosswalk to access the cleared sidewalk in front of the post office except that she would have had to walk on the road to the crosswalk because the sidewalk on the opposite side of the street was inaccessible due to a snow bank on that side of the road. (ECF No. 33-1 at 40:6–41:11) There was no traffic on 11th Avenue that prevented Roessing from walking on the road to the cleared crosswalk. (ECF Nos. 33-1 at 40:9–20; 33-5 at 39:21–25) Roessing stated that does not know why she did not use the crosswalk. (ECF No. 33-1 at 41:8–11)

5

On the side of the road where the post office was located, there was a snow heap on the edge of the road that extended onto the curb in several areas. (ECF Nos. 33-8, 33-10, 33-11) To access the sidewalk from the road, a person would have to walk through the snow heap or walk on the road to the cleared crosswalk. (ECF No. 33-1 at 41:11–25) The snow heap was created by the local municipality when removing snow from the road. (ECF No. 33-1 at 33:20–25, 34:1–3) Beyond the snow heap, the sidewalk was cleared for pedestrian travel. (ECF Nos. 33-8, 33-10, 33-11)

f. **The Fall**

The snow heap was visible to Roessing when she got out of Betar's vehicle and crossed the road and there was nothing obstructing her view of the snow heap. (ECF No. 33-1 at 42:14–21) There was no traffic coming toward Roessing. (*Id.* at 40:9–20, 42:18–21) Roessing stopped and looked at the snow heap before she crossed it in order to find a pathway through the snow heap. (*Id.* at 42:22–43:4) She did not look for anything other than a pathway and nothing prevented her from further inspecting the snow heap prior to crossing it. (*Id.* at 43:3–43:7) Roessing identified a place in the snow heap where it appeared that other people had previously crossed the snow heap. (ECF Nos. 33-1 at 43:8–10, 45:22–46; 33–8) Roessing described the snow where she walked as "flattened out like somebody was walking on it." (*Id.* at 46:8–9) Roessing saw the snow before she stepped on it and, based on her observation prior to stepping in it, she concluded that it "didn't seem to be slippery." (*Id.* at 46:15)

When Roessing stepped on the snow heap, her boot went down into the snow, she fell forward, and landed on the sidewalk.[1] (ECF No. 33-1 at 47:12–13) Roessing is unsure whether she needed assistance to get up after she fell. (*Id.* at 48:3–5)

After getting up, Roessing continued into the post office and informed a postal employee that she had fallen outside. (ECF No. 33-1 at 48:13–15, 50:10–13) Upon learning of Roessing's fall, Chamberlin took photographs of Roessing's hands and of the sidewalk outside of the post office where Roessing said she had fallen. (ECF No. 33-2 at 23:23–24:7)

Roessing was in the post office for around ten minutes. (ECF No. 33-1 at 51:9–16) After leaving the post office, Roessing and Betar walked back through the snow heap and jaywalked across the street in order to return to Betar's vehicle, which was parked on 11th Avenue directly across from the post office. (ECF Nos. 33-1 at 51:17–52:1; 33-5 at 28:11–18)

g. **Injuries**

As a result of her fall, Roessing fractured her finger and left wrist and injured her knees bilaterally. (ECF Nos. 1 ¶ 12; 33-1 at 50:17–24, 51:6–8; 33-9) She had a cast on her hand for approximately five weeks. (ECF No. 33-1 at 55:6–15)

IV. **Legal Standard**

a. **Summary Judgment**

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6

---

[1] Chamberlin stated that Roessing told him that she "crossed the street[,] hopped over the snow heap, and fell onto the sidewalk." (ECF No. 33-2 at 25:4–8, 37:6–7, 37:24–38:21) Betar stated that Roessing said that she stepped over the snow heap and fell. (ECF No. 33-5 at 38:5–12)

(3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (*quoting Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory

allegations or suspicions to show the existence of a genuine issue") (citation and internal quotation marks omitted)).

### b. Federal Tort Claims Act

As a general rule, the United States has sovereign immunity; however, in enacting the Federal Tort Claims Act ("FTCA"), Congress chose to waive the United States' sovereign immunity in certain circumstances. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218 (2008). Specifically, the FTCA waives immunity for claims for money damages for personal injuries caused by the government's negligence. 28 U.S.C. § 1346(b)(1). The location where the purported act or omission occurred is the law that is to be applied. *Id.* Here, the location where the injury is alleged to have occurred—the sidewalk in front of the Altoona Post Office—is in Pennsylvania, so Pennsylvania law applies.

### c. Pennsylvania Negligence Law

To state a claim for negligence under Pennsylvania law, the plaintiff must allege the following elements: (1) a legal duty; (2) a breach of that duty; (3) a causal relationship between the defendant's negligence and plaintiff's injuries; and (4) damages." *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422 n.9 (3d Cir. 2002)); *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998).

Pennsylvania follows the Restatement Second of Torts with regard to the duty owed by a possessor of land to an invitee. *See Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). It provides that:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

9

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343; *see Fiore v. Holt*, 435 F. App'x 63, 67 (3d Cir. 2011) (per curiam). The "mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition[,] is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence." *Neifert v. Speedway LLC*, Civ. Act. No. 1891 MDA 2016, 2017 WL 4052264, at *3 (Pa. Super. Ct. Sept. 14, 2017) (alteration in original) (quoting *Myers v. Penn Traffic Co.*, 606 A.2d 926, 928 (Pa. Super. Ct. 1992) (en banc)).

To establish the causation element in a negligence claim, the plaintiff must allege that the defendant's breach of its legal duty was both the proximate and actual cause of injury. *Reilly v. Tiergarten Inc.*, 633 A.2d 208, 210 (Pa. Super. Ct. 1993)). "Actual causation is present when the alleged injury would not have occurred but for a certain act or presence of a condition . . . while proximate causation requires that the defendant's wrongful act be a substantial factor in bringing about the plaintiff's harm." *Andrews v. Fullington Trail Ways, LLC*, No. 3:15-cv-228, 2016 WL 3748579, at *5 (W.D. Pa. July 8, 2016) (citations and internal quotation marks omitted). Plaintiff must prove both elements of causation by a preponderance of the evidence. *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978).

"[Q]uestions of proximate cause are typically reserved for the jury." *Vanesko v. Marina Dist. Dev. Co., LLC*, 38 F. Supp. 3d 535, 543 (E.D. Pa. 2014) (internal citations omitted). However,

"nothing precludes a court from determining proximate cause as a matter of law if a jury could not reasonably differ on the issue." *Chetty Holdings Inc. v. NorthMarq Capital, LLC*, 556 F. App'x 118, 121 (3d Cir. 2014).

## V. Discussion

### a. Parties' Arguments

The United States moves for summary judgment on two grounds: (1) the assumption of the risk doctrine bars Roessing's negligence claim, and (2) Roessing's negligence claim fails because the United States exercised reasonable care in removing snow and ice from the sidewalk and keeping the sidewalk safe for pedestrian travel. (ECF No. 31 at at 4–9) Roessing contends that the unsafe condition of the snow heap was not open and obvious and that under the factual circumstances she did not assume the risk of injury. (ECF No. 37)

### b. Assumption of the Risk

Although a possessor of land has a duty to protect a business invitee from foreseeable harm, that duty is not absolute. A possessor of land owes no duty to a plaintiff if the plaintiff "discover[ed] dangerous conditions which [were] both open and avoidable, and nevertheless proceed[ed] voluntarily to encounter them." *Carrender v. Fitterer*, 469 A.2d, 120, 123 (Pa. 1983). "Under the doctrine of assumption of the risk, a defendant is relieved of its duty to protect a plaintiff where the plaintiff has voluntarily and deliberately proceeded to face a known and obvious risk and therefore is considered to have assumed liability for his own injuries." *Barrett v. Fredavid Builders, Inc.*, 685 A.2d 129, 131 (Pa. Super. Ct. 1996); *see* Restatement (Second) of Torts § 343A; *Carrender*, 469 A.2d at 123. A danger is "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the

11

visitor, exercising normal perception, intelligence, and judgment." *Carrender*, 469 A.2d at 123–24 (citation omitted). For a danger to be "known," it must "not only be known to exist" but also "recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." *Id.* (citation omitted).

Under Pennsylvania law, the doctrine of assumption of the risk must be examined when determining whether the defendant owed plaintiff a duty. *Kaplan v. Exxon Corp.*, 126 F.3d 221, 224–25 (3d Cir. 1997). Assumption of the risk is a question for the jury "unless reasonable minds could not disagree." *Id.* at 225 (citing *Carrender*, 469 A.2d at 124). To grant summary judgment on assumption of the risk, the Court must find—conclusively and beyond question—that: "(1) [the plaintiff] consciously appreciated the risks attending her action; (2) she assumed the risk of injury by engaging in the action despite appreciating its risks; and (3) the injury she sustained was the same as that which she appreciated and assumed." *Dalton v. The Little Lion*, No. 19-5358, 2021 WL 1293424, at *4 (E.D. Pa. Apr. 7, 2021); *see Bullman v. Giuntoli*, 761 A.2d 566, 573 (Pa. Super. Ct. 2000); *see also Murphy v. Excel Site Rentals LLC*, No. 4:17-CV-02353, 2019 WL 3387661, at *6 (M.D. Pa. July 26, 2019).[2]

### 1. Roessing consciously appreciated the risks attending her action and was subjectively aware of the risk of stepping on snow and ice.

The doctrine of assumption of the risk will only apply as to prevent recovery where the evidence "conclusively [establishes] that the plaintiff was subjectively aware of the risk." *Barrett*, 685 A.2d at 131. "It is not enough that the plaintiff was *generally* aware that the activity in which he was engaged had accompanying risks. Rather, the plaintiff must be aware of 'the

---

[2] Some courts state that there are only two elements to assumption of the risk: "[t]he risk must be perceived, and the risk must be faced voluntarily." *Spady v. Acme Markets & FHG Companies*, LLC, No. 1900 EDA 2016, 2017 WL 4512138, at *3 (Pa. Super. Ct. Oct. 10, 2017); *see Barrett*, 685 A.2d at 131.

*particular* danger' from which [s]he is subsequently injured in order to voluntarily assume that risk as a matter of law. *Barillari v. Ski Shawnee, Inc.*, 986 F. Supp. 2d 555, 563 (M.D. Pa. 2013) (emphasis in original) (quoting *Bolyard v. Wallenpaupack Lake Estates, Inc.*, No. 3:10–cv–87, 2012 WL 629391, at *5–6 (M.D. Pa. Feb. 27, 2012)). However, "[t]here are some dangers that are so obvious that they will be held to have been assumed as a matter of law despite assertions of ignorance to the contrary." *Howell v. Clyde*, 620 A.2d at 1107, 1110 n.9 (Pa. 1993); *see Hansen v. Peco Energy Co.*, No. 98-cv-1555, 1999 WL 681481, at *4 (E.D. Pa. Aug. 25, 1999), *aff'd*, 229 F.3d 1138 (3d Cir. 2000); *Greenberg v. Gen. Elec. Co.*, No. CIV. A. 92-1923, 1993 WL 228902, at *9 (E.D. Pa. June 23, 1993), *aff'd*, 19 F.3d 643 (3d Cir. 1994).

Roessing consciously appreciated the risks of stepping on the snow heap and was subjectively aware of the particular danger of slipping and falling on the snow heap. Roessing's own testimony is that she saw the snow heap prior to stepping on it and she affirmatively considered where to cross the snow heap prior to stepping on it. *See Carrender*, 469 A.2d at 124. (ECF No. 33-1 at 42:14–43:10, 46:6–18) Recognizing the risks associated with going through the snow heap, she looked for a pathway through the snow and selected a route that "looked like it had been walked on before." (*Id.* at 43:1–10, 46:8–9) Although Roessing stated that the part of the snow heap she stepped on "didn't seem to be slippery" (*Id.* at 46:13–15), the risk of slipping on snow and ice is known and obvious. *See Kaplan*, 126 F.3d at 226 (concluding that a snow mound was a known and obvious risk); *Barrett*, 685 A.2d at 131 ("Ice always is slippery, and a person walking on ice always runs the risk of slipping and falling."); *Spady v. Acme Markets & FHG Companies, LLC*, No. 1900 EDA 2016, 2017 WL 4512138, at *4 (Pa. Super. Ct. Oct. 10, 2017) (stating that "snow and ice is always slippery and a person walking over snow and ice always

13

risks slipping and falling"). It is insufficient that Roessing attempted to avoid the snow and ice by choosing what she thought was the safest route through the snow heap. *See Denzel v. Fed. Cleaning Contractors*, No. 3307 EDA 2014, 2015 WL 6460361, at *6 (Pa. Super. Ct. Oct. 9, 2015) (granting summary judgment where the plaintiff was aware of the snow and ice on the sidewalk in front of her and subsequently "traverse[d] the area anyway hoping to avoid the ice"). Therefore, prior to stepping on the snow heap, Roessing was aware of the general danger of snow and ice, was aware of the specific risk of stepping on the snow heap, and knew there was a risk of falling from crossing the snow heap. Accordingly, the snow heap was a known and obvious danger and Roessing consciously and subjectively appreciated the risk of stepping on the snow heap.

> 2. **Roessing assumed the risk of injury by engaging in the action despite appreciating its risks.**

To assume the risk, the plaintiff must do so voluntarily. "Among the circumstances to consider in evaluating the voluntariness of the plaintiff's action is whether the plaintiff had a real 'choice.'" *Kaplan*, 126 F.3d at 226 (quoting *Howell*, 620 A.2d at 1112). "[T]he operative fact is [the plaintiff's] voluntary choice to undertake the risk." *Howell*, 620 A.2d at 1112. A plaintiff does not make a real choice "when there is no safe alternative to encountering the risk." *Kaplan*, 126 F.3d at 226.

In *Kaplan*, in order to board a bus, the plaintiff climbed over an icy mound of snow after being warned by another passenger that it was icy. *Id.* There was another route to the bus, which would have required the plaintiff to to walk down the block to where there was a cleared path to the street. *Id.* The district court granted summary judgment on assumption of the risk,

finding that there was a safe alternative route to the bus. *Id.* The Third Circuit reversed the district court's grant of summary judgment, concluding that a jury could find that there was no safe alternative to the bus because: (1) the plaintiff would have to "walk a distance back towards the bus stop in an icy street with traffic"; (2) the plaintiff would have to precisely time when the bus would arrive to avoid standing in the middle of the street waiting for the bus; and (3) the bus may have left the plaintiff while she was taking the alternative route because the alternative route required her to initially walk away from the bus stop to be able to access the street. *Kaplan*, 126 F.3d at 226–27. The court concluded that "reasonable minds could disagree whether Kaplan acted 'under circumstances that manifest[ed] a willingness to accept' the risk." *Id.* at 226 (alteration in original) (quoting *Berman v. Radnor Rolls, Inc.*, 542 A.2d 533 (Pa. Super. Ct. 1988)).

Here, there are no concerns similar to those discussed in *Kaplan* and reasonable minds could not disagree that Roessing acted "under circumstances that manifest[ed] a willingness to accept" the risk. *Id.* (quoting *Berman*, 542 A.2d at 533). Roessing exited the car after Betar had found a parking spot on 11th Avenue across the street from the post office and jaywalked across the road. (ECF No. 33-5 at 26:25–27:10) Roessing stated that the road was "fairly" clear and there was no evidence that the road itself was icy. (ECF No. 33-1 at 40:15–17) There was no oncoming traffic. (ECF No. 33-1 at 40:9–20) Thus, nothing prevented Roessing from walking down the road to the cleared crosswalk, which was only a few car-lengths away, and Roessing does not know why she did not do so. (ECF No. 33-1 at 41:4–11) In addition, prior to attempting to navigate the snow heap, Roessing could have returned to the car—the car was parked only a few feet away and there was no oncoming traffic—and from there either taken

her time to look for an alternative route to walk to the post office or driven to another location to be dropped off closer to the cleared crosswalk.

In opposing summary judgment, Roessing attempts to distinguish the circumstances here from the circumstances in *Carrender*. (ECF No. 37 at 5–7) In *Carrender*, the plaintiff was parking a vehicle and observed parking spots in the parking lot that were free of ice, but instead chose to park in a spot that was covered in ice and thereafter slipped and fell on the ice. *Carrender*, 469 A.2d at 121–22. Roessing argues that, unlike in *Carrender*, she did not see the safe alternative—the cleared crosswalk—prior to navigating the snow heap. (ECF No. 37 at 6–7) But the question under this factor is whether there was a safe alternative to encountering the risk, not whether the plaintiff was subjectively aware of a safe alternative. *See Kaplan*, 126 F.3d at 226 (considering whether there was an alternative, not plaintiff's subjective awareness of an alternative); *Carrender*, 469 A.2d at 124–25 (same). Roessing's deposition testimony further makes clear that she had had time to look for an alternative prior to crossing the snow heap to access the post office and that she was aware that she could have returned to the car. Therefore, Roessing voluntarily assumed the risk of crossing the snow heap.

### 3. The injury Roessing sustained was the same as that which she appreciated and assumed.

The injury sustained must be the result of the same risk appreciated and assumed. *Bullman*, 761 A.2d at 573. The injury Roessing sustained is the result of the same risk she appreciated and assumed. The risk of walking through snow or ice is that the person might slip and fall. *Spady*, 2017 WL 4512138, at *4. This is exactly what happened to Roessing. (ECF No.

16

33-1 at 47:12–13) Slipping and falling is the same risk that Roessing recognized before crossing the snow heap and that she attempted to mitigate in her choice of where to cross the snow heap.

Accordingly, the Court finds that Roessing assumed the risk of falling when crossing the snow heap and, therefore, summary judgment is appropriate on Roessing's negligence claim.

## VI. Conclusion

For these reasons, the Court grants Defendant's motion for summary judgment regarding Plaintiff's negligence claim.[3]

An appropriate order follows.

---

[3] Because the Court grants summary judgment based on assumption of the risk, the Court does not consider the Defendant's alternate ground for summary judgment.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHERRI A. ROESSING, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:19-cv-161 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 28th day of April, 2021, upon consideration of Defendant United States of America's Motion for Summary Judgment (ECF No. 30), and in accordance with the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that the Motion is **GRANTED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE